E. E. BLACK, LIMITED, *v.* THE COUNTY OF MAUI.

No. 2108.

ARGUED SEPTEMBER 6, 1933.     DECIDED SEPTEMBER 22, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE CASE
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY PERRY, C. J.

This is a statutory submission of a controversy upon an agreed statement of facts.

On April 22, 1932, the plaintiff corporation entered into a contract with the County of Maui for the construction of a sewer system at Kahului, in that county. The contract, including a set of specifications, was in writing. In due course the contractor complied with all of the contractual requirements on his part to be kept and performed, with the possible exception hereinafter stated. In the performance of the work the contractor employed as laborers four men at the rate of $2.75 per day for a total of 273.19 days and eighty-two men as laborers at the rate of $2.50 per day for a total of 3691.12 days. By Act 86 passed at the session of 1929, the legislature declared that "the daily pay for each working day of each laborer engaged in construction or repairing roads, bridges or streets, waterworks or other works, either by contract or otherwise, for the Territory of Hawaii, or for any political subdivision thereof, shall not be less than three and no/100 dollars ($3.00)." Similar statutes prescribing minimum rates of wages for laborers on public works had existed since 1907. The Act of 1929 merely increased the rate per day to three dollars. At its session of 1932 Act 36 was passed, reading as follows: "Section 178 of the Revised Laws of Hawaii 1925, as amended by Act 165 of the Session Laws of Hawaii 1925, and Act 86 of the Session Laws of Hawaii 1929, is hereby amended to read as follows: 'Sec. 178. Wages of laborers on public works. The daily pay for each working day of each laborer engaged in construction or repairing roads, bridges or streets, waterworks or other works, by contract for the Territory of Hawaii, or for any political subdivision thereof shall not be less than two and 50/100 dollars ($2.50); provided, however, that this Act shall not apply to con-

tracts in effect on the approval date of this Act.' " This Act of 1932 was approved by the governor on May 10 of that year and took effect upon its approval.

The total contract price was $53,112.20 and extras were performed amounting to $5,720.52, or a total agreed compensation of $58,832.72. On July 24, 1932, a payment of $6,166.75 was made; on September 23, 1932, $3,591.72 was similarly paid; on October 24, 1932, plaintiff made demand on the defendant for the amount of the balance then remaining unpaid, to-wit, the sum of $49,074.25. On December 23, 1932, $1,962.52 was paid; on February 13, 1933, $44,000 and on February 17, 1933, $98.57. These payments left a balance unpaid of $3,013.16. This last named sum the defendant refused to pay on the ground that the contractor had employed laborers, although with their consent, at rates of pay less than three dollars per day. The plaintiff, on the other hand, contends that the laborers voluntarily accepted employment at the rates of wages which were subsequently paid, that the statute of 1929 "was directory only and not mandatory" and that there was no legal obligation on the plaintiff to pay all the laborers as much as three dollars per day.

In the specifications which were made part of the contract the following provisions *inter alia* were included: "The contractor shall keep himself fully informed of all existing and future Territorial and Federal laws * * * which in any manner affect those engaged or employed in the work * * * or which in any way affect the conduct of the work. * * * He shall at all times himself observe and comply with, and shall cause all of his agents and employees to observe and comply with, all such existing and future laws. * * * In order that the engineer may determine whether the contractor has complied with the requirements of this contract not readily enforceable through inspection or tests of the work and materials,

the contractor shall at any time when requested submit to the engineer properly authenticated documents or other satisfactory proofs as to his compliance with such requirements. * * * The engineer shall, as soon as practicable after the final acceptance of the work done under this contract, make a final estimate of the amount of work done thereunder and the value thereof. Such final estimate shall be signed by the engineer, and after approval by the board of supervisors of the County of Maui, the county auditor shall pay or cause to be paid to the contractor, in the manner provided by law, the entire sum so found to be due hereunder, after deducting therefrom all previous payments and such other lawful amounts as the terms of this contract prescribe. However, final payment shall not be made until the contractor has furnished satisfactory evidence that all persons, firms, or corporations who have done work or supplied materials under this contract have been paid or satisfactorily secured."

The language above quoted from the contract is clear and unambiguous. It could scarcely be made clearer. The contractor expressly undertook not only to keep himself informed of "all existing and future Territorial laws" affecting those employed in the work or the conduct of the work but also at all times to observe and comply with and to cause all of his agents and employees to observe and comply with all of such existing and future laws. If there were at the time of the execution of the contract or at any time during the performance of the work valid laws to the effect that no laborer should be employed at less than three dollars per day or at any other named minimum sum, the contractor promised and undertook to observe those laws, both existing and future, as clearly as though it had said, "The contractor hereby agrees to pay each and every laborer employed on the work wages of not less than three dollars per day and not less than any

minimum which may be hereafter prescribed by statute."
This seems to be so clear from the language used in the
contract as not to require argument.

Referring to the contractual duty of the plaintiff to
observe all future laws as well as all existing laws, it is
contended on behalf of the contractor that Act 36, L.
1932, not only declared that its provisions were not ap-
plicable to contracts in effect at the time of its approval
(the contract under consideration was in effect at the
time of the approval of the Act of May 10, 1932) but
repealed Act 86, L. 1929, and left in force no statutory
provision prescribing a minimum rate of wages for labor-
ers on public contracts. This view we cannot adopt. The
operative words of section 1, Act 36, L. 1932, are that the
preceding statute on the subject "is hereby amended to
read as follows." When the legislature declared in the
proviso that "this Act shall not apply to contracts in
effect on the approval date of this Act" it simply declared
that in so far as contracts then (May 10, 1932) existing
were concerned the last preceding Act, being the Act of
1929, was not thereby amended but was left in force and
that as to all contracts thereafter to be entered into the
amendment would operate. There is not in the statute of
1932 or in any other statute to which attention has been
called any indication that the legislature intended by
the Act of 1932 to put an end to all provisions of law
prescribing minimum wages. While it was the duty of
the contractor to observe all "future" laws, by which was
meant laws enacted after the date of the contract, the
duty was not thereby assumed to observe a statute which,
by its very terms, was declared by the legislature not to
be applicable to that particular contract.

A substantial reason for not making the $2.50 rate
applicable to contracts already entered into can well be
imagined. Bids offered for public works while the statute

of 1929 was in force and before the enactment of the statute of 1932 would be calculated and presented upon the theory of the payment to laborers of not less than three dollars per day and in entering into those contracts the Territory or the counties, as the case may be, undertook in reality to repay the successful contractor at the rate of not less than three dollars per day for each laborer engaged in the work. The parties having entered into this engagement, why should the legislature gratuitously relieve the contractor of a part of the financial burden assumed by him? It was not unjustifiable or improper in May, 1932, to prescribe one minimum rate for contracts already in force and to prescribe another minimum rate for contracts thereafter entered into.

Much of the argument advanced on behalf of the plaintiff is in support of the contention that the statute of 1929 is directory only and not mandatory. With this subject we need not concern ourselves. The intention of the legislature as expressed in Act 86, L. 1929, was, clearly, that the daily pay for each laborer engaged in the construction of public works by contract "shall not be less than three dollars." The power of the legislature to so direct, even in a strictly mandatory statute, is not questioned. The plaintiff undertook to comply with the law and to pay each laborer not less than three dollars per day. The validity of his contract in that respect is not questioned. The county may properly insist that it be performed. The contractor also expressly agreed that "final payment shall not be made until the contractor has furnished satisfactory evidence that all persons * * * who have done work * * * under this contract have been paid or satisfactorily secured." The statement of agreed facts shows that some of the persons who were employed in the performance of the contract were not paid as much as the minimum rate of wages which, by the contract, the

contractor promised to pay. In pursuance of this agreement of the parties the defendant was and is authorized to withhold final payment until the contractor shall comply with this part of his agreement.

Under the facts stated in the submission the total amount which the laborers were underpaid was $1913.85. The county has withheld the sum of $3013.16. It was entitled, however, to have withheld the whole of the final payment which was a much larger sum than $3013.16. In other words the county is entitled to withhold it now as a final payment until the contractor shall comply with his agreement relating to the pay of laborers who were actually employed in the work.

Under these circumstances judgment will be entered for the defendant.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for plaintiff.

*E. R. Bevins,* County Attorney of Maui (*Wendell F. Crockett,* Deputy County Attorney of Maui, with him on the brief), for defendant.